# BROCK *v.* SAWYER.

One M. H. made a will, and gave to several nephews and nieces by name
(Susan Maria Hanson being one of them), fifty dollars each, to be paid
in six months after the decease of the testatrix, or upon the legatees' arriv-
ing at the age of twenty-one years.   She also gave to said Susan Maria
Hanson the sum of seven hundred dollars, to be paid to her in such
sums and at such times as the executor of the will should think proper
and most for her benefit; provided, that if the whole or any part there-
of should remain unexpended at the decease of said Susan Maria, such part
should be equally divided among her children, if she should leave any;
if not, should be divided equally between the legatees mentioned in the
first clause of the will or the survivors of them.   She then gave all the
rest, residue and remainder of her property (after providing for certain
debts, legacies, &c.) to said Susan Maria Hanson and several other neph-
ews and nieces, to be divided in equal proportions between them, with
certain provisions as to the times of payment :

*Held,* that the interest upon said seven hundred dollar legacy was to be
paid to the said Susan Maria from the decease of the testatrix, in the
same way and manner as the principal; that the provisions of the
will made and constituted the executor the trustee of the said Susan
Maria for the amount of said seven hundred dollars, and interest thereon ;
that he is to hold the same for the personal use and benefit of said Susan
Maria, and that, upon the marriage of the said Susan, neither she nor

her husband, either or both of them, have any right to claim to have this fund invested in a homestead or in any other way; that the discretion of the trustee is to govern in regard to the time and amount of payments; and that the husband acquired by his marriage no right over this fund, either to principal or interest, nor did he thereby become vested with any power to collect or appropriate or in any way to interfere with this fund; but that he may properly, in right of his wife, collect and receive any balances, either of principal or interest, that may remain unpaid upon the fifty dollar legacy, or the residuary legacy given to her by said will.

In such a case this court will interfere in behalf of the *cestui que trust*, upon her own application, or that of her husband, in case of gross neglect or refusal of the trustee to pay over money as her wants or necessities might clearly require.

IN EQUITY. The complainant sets forth that one Mary Hodgdon, of Weare, N. H., on the 13th day of October, A. D. 1851, made her will and bequeathed to the oratrix, then Susan Maria Hanson: (1.) Fifty dollars, to be paid by the executor of said will in six months after the decease of the testatrix, or upon the legatee's arriving at the age of twenty-one years; (2.) The sum of seven hundred dollars, to be paid to the said Susan Maria Hanson in such sums and at such times as the executor of the will shall think proper, and most for her benefit; and if the whole or any part thereof should remain unexpended at the decease of the said Susan Maria, such part to be equally divided among her children, if she leave any; if not, to be divided equally among the legatees mentioned in the first clause of the will, or the survivor of them; (3.) A residuary legacy to be paid her at the decease of her mother, Abigail B. Hanson:

That the testator died soon after the making of said will; that said Abigail B. Hanson died August 9, 1855; that the defendant is the executor of said will, which has been duly proved, approved and allowed; that the oratrix, the said Susan Maria Hanson, was married to said Brock, the orator, November 28, 1855, whereby the orator claims that in the right of his wife he became entitled to all the

legacies, money, property and interest bequeathed by said testatrix to said Susan Maria in said will, which had not been received by the said oratrix before her said marriage; that the oratrix had, at the time of filing this bill, one child, a son; that the plaintiffs are poor, and have no house to live in, or homestead. The bill charges that the plaintiffs have requested the defendant to pay over to them said bequest of $700, that they might purchase therewith a homestead; that they have requested the defendant to invest the same himself in a homestead for the benefit of the oratrix and her children; that they have requested the defendant to pay over to them the interest upon said $700; also, that they have requested the defendant to pay over the residuary legacy, all of which the defendant, as executor aforesaid, refuses to do.

The bill prays: (1.) For an answer; (2.) For an account of the estate of the testatrix, and the disposition the executor has made of the same; (3.) That the executor may be ordered to account with the orator, and pay over to him for the oratrix her just share of the whole amount of the residue of said estate; (4.) That the executor may be ordered to pay over to the orator for the oratrix said sum of $700, with the interest and income of the same, or so much thereof as he is entitled in the right of his said wife to receive, in fairness, equity and good conscience, according to the intent of said testatrix and of her said will; (5.) That the defendant may be removed from his said trust as executor; and (6.) For further relief.

The defendant, in his answer, admits the making of said will, with the several bequests to the oratrix and others, as contained at large in said will, a copy of which he annexes to his answer, and from which it appears that the testatrix first bequeathed to her nine nephews and nieces by name (Susan Maria Hanson being one of them), the sum of fifty dollars each, to be paid in six months after her decease, &c. She next bequeathed to Susan Maria Han-

son the sum of seven hundred dollars, to be paid as par-
ticularly set forth in the bill. She afterwards gave all the
rest, residue and remainder of her property (after provid-
ing for certain debts, legacies, &c.) to eight of her neph-
ews and nieces by name (said Susan Maria Hanson being
one of them), to be paid to them upon the decease of their
mothers respectively, and provided that the interest upon
such residuary legacies should be paid to the said mothers
while they lived. The answer further admits that the
said Mary Hodgdon died, and that said will was duly
proved as alleged, and that the defendant is the executor
thereof, and that all the property of the said Mary Hodg-
don came into his hands ; and he presents an account of
the assets thus coming into his hands, a large proportion
of which was in money and notes bearing interest, with
a list of debts, expenses and legacies, as paid by him in
the administration of said estate. He admits that the ora-
trix became of age the 4th day of May, 1852 ; that she
was married, and that her mother, Abigail B. Hanson,
died, as stated in the bill, and that the plaintiffs have one
son, as alleged. But he does not admit that the said ora-
tor, in the right of his wife, became well entitled to all
the legacies, money, property and interest bequeathed by
said testatrix in said will to the said Susan Maria, but sub-
mits that question to the court upon said will. He ad-
mits that the plaintiffs are poor and have no homestead
or house of their own to live in. He alleges that he has
paid over the bequest of fifty dollars, and also the residu-
ary legacy, amounting to $239.33, to said Susan Maria,
and that he has also paid her the sum of $109.67 towards
the legacy of $700, which he claims was all that it was
his duty to pay, under the circumstances and condition
of the plaintiffs, and all that it was proper and most
for the benefit of the said Susan Maria that he should
pay, and claims that in the exercise of a sound discretion
he ought to reserve the larger part of said $700, to be

applied to the relief of the said Susan Maria, when, by reason of ill health or other circumstances, her necessities should be more urgent; that he knows this to have been the wish and intention of the testatrix from repeated conversations with her, both before and at the time of making said will, in which she expressed the purpose to provide for her in this way, as she feared, from the facts of a former illness, somewhat alarming in its character, that the said Susan Maria might at some time become incapable of taking care of herself; and this she said to the defendant at the time of making said will, and gave this as a reason why she made a larger provision for her than for the rest. He further alleges that said testatrix, in said conversation, expressed her wish that the money designed for her use should be applied in such way as to be beyond the control of her husband, if said Susan Maria should be married, and for her sole and exclusive use. The defendant then follows with admissions, denials and explanations of what may have been said between him and the plaintiffs, or either of them, as alleged in the bill, in relation to paying over the $700, or investing the same in a homestead, which, in the view we take of the case, are not material. He admits that he has said that as he understood the will, the oratrix was not entitled to all the interest upon the seven hundred dollar legacy, while it remained in his hands, but that the interest upon the same, until the principal should be paid over, in accordance with the provisions of the will, belongs to and should be divided among, and given to the residuary legatees named in said will, and that said Susan was not entitled to the whole of said interest, but only to her share with the rest of such legatees, but is ready to account for the interest as well as the principal of said legacy, at any time, according to such construction as shall be given to the will by this court.

*Hill,* for the complainants.

*Kittredge & Bellows,* for the respondent.

SARGENT, J.* It is difficult to see upon what grounds the respondent could conclude that the interest upon the seven hundred dollar bequest to Susan Maria Hanson was to be paid to the residuary legatees, and not to her. From the form of this bequest in the will of Mary Hodgdon, we conclude that this legacy was to be separated from the remainder of the estate, and severed and set apart for the specified purpose, as much as the sums of $50 each to the several legatees under the first section of said will. Those legacies were to be paid in six months, or upon the legatees' arriving at the age of twenty-one years; this one at such times and in such sums as the executor should think proper and most for her benefit. This legacy was to pass, not, to be sure, into the hands of the legatee immediately, but into those of the executor in trust for her, upon the death of the testatrix, and from that time whatever interest may have accrued upon this sum belongs as much to the legatee as the principal does, and in the same way. We come to the same conclusion also from considering the subsequent section of said will, which disposes of all the rest, residue and remainder of the testatrix's estate, as though the sums before specified were to be first taken from the estate, and set apart for the purposes and trusts for which they were designed. There can be no manner of doubt but that the interest accruing upon this sum of $700 from the decease of the testatrix, is to be appropriated for the benefit of the legatee, like the principal, in accordance with the provisions of the trust.

The effect of the provisions in the will is to create a trust and to constitute the executor of the will a trustee of the oratrix, the legatee; and he would be chargeable for any breach of his trust, like trustees in other cases. It is too well settled to be for a moment controverted, that this court, in such cases, may interfere in behalf of the *cestui que trust*, upon her own application or that of her friends, in

* BELLOWS, J., having been of counsel, did not sit.

a case of gross neglect or refusal of the trustee to pay over money as her wants or necessities might clearly require. *Kimball* v. *Reding*, 31 N. H. 76 ; Adams' Eq. 61.

It is not contended in this case that the court have not that power, provided a case were shown which called for any such interference. But it is claimed that no such case is made out here. The plaintiffs were married November 28, 1855, and it appears, by the testimony in the case, that Brock was a currier by trade, and could earn a dollar a day ; that he is temperate and industrious, and enjoys good health ; that he has constant employment ; that he and his wife are both young, and have but one child, about two years old ; that the mother and child are in the enjoyment of health, except that Mrs. Brock says she has not been well for a year, but has been able all the time to do her house work. It does not appear that they have been at any expense in consequence of sickness, either in paying doctors' bills or procuring help in the family. The money has not been required for the education of the child, as it may be hereafter, if the child should live.

The respondent in his answer alleges that the orator, Brock, is not provident and careful of his means, and that, therefore, it would not be proper to pay over this money to him or for his family, faster than their immediate wants require. The evidence upon that point only shows, however, that Brock owes two debts of about twenty dollars each, upon one of which he has been sued.

The evidence also tends to show that Mrs. Brock, before her marriage, and before the making of said will, had been ill, and had exhibited symptoms which led the testatrix to fear that she might at some period of her life become incapable of taking care of herself without assistance. And it also appears that this bill of complaint was filed December term, 1857, and that after the decease of the testatrix, in the fall of 1851, and before the filing of this bill, a period of some six years, the respondent had paid

over to the oratrix the legacy of $50, and $239.33, which he claims to be the amount of the residuary legacy, which could not, by the terms of the will, be paid until the death of her mother, about August 9, 1855; and the further sum of $109.67, upon the legacy of $700, amounting in all to $399, or about sixty-six dollars a year, upon an average. By the terms of the will, this legacy of $700 was to be paid in such sums and at such times as the executor should think proper and most for the benefit of the legatee.

Upon these facts and circumstances, the question arises whether a case is made out calling for the interference of the court; and we are clearly of opinion that no such case is shown upon the evidence. While the defendant does not claim, and could not properly claim, that he had an arbitrary discretion in the premises; that he had a right to pay or not, according to his own mere whim or caprice, yet he may, we think, properly claim that, having been entrusted by the testatrix with this legacy, to be paid as he should judge most for the benefit of the legatee, the court should not interfere with that discretion, until some kind of a cause is shown of its abuse. We think it apparent, from the terms of the bequest itself that the testatrix did not expect or intend that the executor should pay this legacy all at once, or in large sums, but in such sums as the wants or necessities of the legatee might, from time to time, require; and it was his duty to take into consideration not only her present position and wants, but her future prospects. A personal trust was reposed in the executor, who was well known to the testatrix, he being her brother-in-law, and it was the will of the testatrix that his discretion should govern and regulate the payments to the legatee; and until it is made to appear that he has in some way abused his trust, and neglected to provide for the wants of the legatee, the court will not interfere; and clearly no such case is made out by the evidence here.

The legatee and her husband ask for the whole of this legacy, to be invested according to their discretion, thereby superseding the discretion of the trustee; and while we cannot doubt that the executor is to apply the interest upon this sum as well as the principal to the purposes specified, and that this was the design of the testatrix, yet it would seem to be apparent also that she did not contemplate that this legacy should be invested in a homestead; for, had that been her intention, she would undoubtedly have so expressed it in the will. We certainly are unable to discover any breach of trust, or any failure to perform his duty, on the part of the trustee, in declining thus to invest it. This trust was created for the personal benefit of the legatee during her life; and if any of it remain unexpended at her decease, provision is made in the will for its distribution. We think, therefore, that the design of the testatrix, as gathered from the will alone, evidently was that the husband of the legatee, if she should ever have one, should not acquire any right or title in or to this fund, or have any control over the same, in any way whatever. The orator, therefore, has, by his marriage with the legatee, acquired no right or title to this legacy, and cannot collect the same or any part of the same, either of principal or interest, or appropriate or in any way control it, until it shall be first paid over to the legatee by the trustee. But he unquestionably acquired, by his said marriage, the right to demand and recover whatever may remain unpaid of the fifty dollar legacy, or the interest upon the same, if any is due; also any balance of principal or interest that may remain due and unpaid of the residuary legacy, as all the contingencies upon which the payment of these sums depended had happened before the filing of this bill, and, in fact, before the intermarriage of these plaintiffs. It appears by the schedule of the property belonging to the estate of the testatrix, which came into the executor's hands for administration, that there was, in cash

on hand, $804.81, and thirteen and one third shares of Concord Railroad stock, which, at par, amounted to $666.66. There was also a schedule of notes, which had been on interest for a time, but upon which no interest had been computed in the schedule, and which, without interest, amounted to $1,898.27. It no where appears that the executor has allowed or accounted for any interest or income upon all this property; either for the interest due on the notes at the time of the testatrix's decease, or, since her decease, upon any of her estate. From the nature and situation of this property, it might, perhaps, be fairly presumed that all of it has been drawing interest while in the executor's hands; at least in the absence of all testimony tending to rebut such presumption. If the executor is thus to be charged with interest, it would seem that there must be something remaining unpaid upon the residuary legacy to the oratrix, which the plaintiffs are entitled to. It is also claimed that there is a balance of interest in the executor's hands, which he should have paid to the said Abigail B. Hanson, in her life-time, but which was not thus paid. If this should be found to be so, then the plaintiffs would be entitled to this balance. The plaintiffs also claim a balance of interest as being due upon the fifty dollar legacy. We have not sufficient facts before us to show how much interest the executor should be charged with, or how much he is entitled to receive in off-set for his services. Those questions which are thus properly in issue between the parties in this proceeding, together with the whole question of interest upon the estate, may be referred to a master, who may, in case the parties do not themselves adjust these matters, take testimony, hear the parties, and find and report the facts to this court, whereupon such orders will be made as shall be deemed just and equitable.